17-3854-cv
*Dr. Lucille Levin, et al. v. JPMorgan Chase Bank, N.A.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of October, two thousand eighteen.

Present:
> RICHARD C. WESLEY,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*,
> GEOFFREY W. CRAWFORD,
> *District Judge*.[*]

_____

DOCTOR LUCILLE LEVIN and JEREMY LEVIN,

> *Plaintiffs — Third-Party Defendants — Cross-Defendants — Counter-Claimants — Counter-Defendants — Appellants*,

> v.                                                    17-3854-cv

JPMORGAN CHASE BANK, N.A.,

> *Defendant — Third-Party Plaintiff — Third-Party Defendant — Counter-Defendant — Cross-Defendant — Counter-Claimant — Appellee*.[†]

_____

For Plaintiff-Appellants:          SUZELLE M. SMITH, Howarth & Smith, Los Angeles, CA

---

[*] Chief Judge Geoffrey W. Crawford, of the United States District Court for the District of Vermont, sitting by designation.

[†] The Clerk of Court is respectfully instructed to amend the caption as set forth above.

1

For Defendant-Appellee:               STEVEN B. FEIGENBAUM, Levi Lubarsky Feigenbaum
                                      & Weiss LLP, New York, NY

Appeal from an October 27, 2017 judgment of the United States District Court for the

Southern District of New York (Oetken, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED** that the judgment of the district court is **AFFIRMED**.

Lucille and Jeremy Levin ("the Levins") appeal from an October 27, 2017 order of the

United States District Court for the Southern District of New York (Oetken, *J.*), which was

certified as a final judgment under Federal Rule of Civil Procedure 54(b) on February 12, 2018,

denying their motion for leave to file a supplemental complaint pursuant to Federal Rule of Civil

Procedure 15(d).   We assume the parties' familiarity with the underlying facts, the procedural

history of the case, and the issues on appeal.

*       *       *

The Levins hold an unsatisfied judgment against the Islamic Republic of Iran ("Iran")

arising out of the 1984 kidnapping of Jeremy Levin in Beirut, Lebanon.   On February 6, 2008,

the United States District Court for the District of Columbia entered judgment in the amount of

$28,807,719 in the Levins' lawsuit against Iran pursuant to § 1605(a)(7) of the Foreign

Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602 et seq. ("FSIA").[1]   *See Levin v. Islamic*

*Republic of Iran*, 529 F. Supp. 2d 1 (D.D.C. 2007).   The Levins now seek to attach funds to

satisfy that judgment.

---

[1]  Section 1605(a)(7) has since been repealed and replaced.   Pub. L. No. 110-181, Div. A.,
§ 1083(b)(1)(A)(iii), 122 Stat. 341 (2008).   The new provision, 28 U.S.C. § 1605A, now provides an
exception to the general immunity from suit of foreign governments where "the foreign state [has been]
designated as a state sponsor of terrorism" by the U.S. Department of State.   § 1605A(a)(2)(A)(i)(l).

2

On June 26, 2009, the Levins filed their initial complaint in the instant lawsuit, alleging that JPMorgan Chase Bank, N.A. ("JPMCB") possessed "assets blocked by the U.S. government due to the fact that Iran has an interest in them either directly or indirectly ('Iranian Blocked Assets')." App 183. A later round of discovery revealed the existence of two previously undisclosed Iranian Blocked Assets in JPMCB's possession: (1) a deposit account under the name of Lebanese businessman Kassim Tajideen (the "Tajideen Account") and (2) an account (the "Saderat Account") holding the proceeds of a wire transfer, also known as an electronic funds transfer (the "EFT"), that was blocked by JPMCB in accordance with Iranian sanctions regulations promulgated by the Office of Foreign Assets Control ("OFAC"). On July 12, 2017, the Levins sought leave under Fed. R. Civ. P. 15(d) to file a supplemental complaint seeking turnover of the Tajideen Account and the Saderat Account pursuant to § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA")[2] and §§ 1610(f)(1)(A) and (g)(1) of the FSIA.[3]

---

[2] Section 201(a) of the TRIA provides:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA, Pub. L. No. 107-297, 116 Stat. 2322 (2002) (reprinted following 28 U.S.C. § 1610).

[3] Section 1610 of FSIA provides, in pertinent part:

> (f)(1)(A) Notwithstanding any other provision of law . . . any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality of such state) claiming such property is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or

3

JPMCB did not oppose the Levins' motion with respect to the Tajideen Account. With respect to the Saderat Account, however, the parties differed. The Levins argued that the Saderat Account was attachable because the funds belonged to an "agency or instrumentality" of Iran—Bank Saderat, an Iranian bank based in Tehran ("Saderat").[4] JPMCB argued that Saderat lacked title to the funds because the immediate transferor of the funds to JPMCB was not Saderat but Lloyds Bank Plc ("Lloyds"), a U.K. bank headquartered in London that transferred the funds in its capacity as Saderat's correspondent bank.

The district court granted the Levins' motion to supplement their complaint with respect to the Tajideen Account but denied the motion with respect to the Saderat Account. With respect to the Saderat Account, the court concluded that supplementation of the complaint would be futile under *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993 (2d Cir. 2014), and *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014). The court quoted *Hausler* for the proposition that "in order for an EFT to be a blocked asset of [a terrorist state] under TRIA §201(a), either [the terrorist state] itself or an agency or instrumentality thereof (such as a state-owned financial institution) [must have] transmitted the EFT *directly* to the bank where the EFT is held pursuant to the block." *Levin v. Bank of New York Mellon*, No. 09-CV-5900 (JPO), 2017 WL 4863094, at \*4 (S.D.N.Y. Oct. 27, 2017) (quoting *Hausler*, 770

---

section 1605A.

. . .

[(g)(1)] Subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section . . . .

28 U.S.C. § 1610.

[4] Both parties agree, for the purposes of this appeal, that Saderat qualifies as an "agency or instrumentality" of Iran.

4

F.3d at 212 (emphasis and brackets in original)). Because the blocked EFT in question was transmitted to JPMCB directly by Lloyds, rather than Saderat, the EFT constituted property of Lloyds and could not be attached under TRIA or FSIA. *Id*.

\*     \*     \*

We review the district court's holding *de novo*. A district court's denial of leave to amend or supplement a complaint is generally reviewed for abuse of discretion. *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). However, "[w]hen the denial of leave to amend is based on a legal interpretation, such as a determination that amendment would be futile, a reviewing court conducts a *de novo* review." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011); *see also Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007) (reviewing *de novo* a district court's denial of leave to amend on grounds of futility). Because the district court denied the Levins' motion to amend their complaint on grounds of futility, we review that decision *de novo*.

Whether the Levins may attach the Saderat Account to satisfy their judgment against Iran turns on the issue of ownership of those funds. *See* FSIA § 1610(g)(1) (authorizing attachment of "the *property of* a foreign state against which a judgment is entered under section 1605A, and the *property of* an agency or instrumentality of such a state" (emphasis added)); TRIA § 201(a) ("the *blocked assets of* [a] terrorist party (including the *blocked assets of* any agency or instrumentality of that terrorist party)" (emphasis added)); FSIA § 1610(f)(1)(A) ("any *property* with respect to which financial transactions are prohibited or regulated" (emphasis added)). *See also Calderon-Cardona*, 770 F.3d at 1000 ("Whether attachment of [] EFTs under §1610(g) is possible turns . . . on whether the blocked EFTs at issue are 'property of' [a foreign state or its agency or instrumentality].").

5

Ownership of property is generally a question of state law. In *Calderon-Cardona*, we noted that "Congress has not defined the type of property interests that may be subject to attachment under FSIA § 1610(g)." *Id.* at 1001; *see also Hausler*, 770 F.3d at 211 (observing the same with regard to TRIA § 201(a)). Absent a federal definition of "property" in either FSIA or TRIA, we apply the "general rule in this Circuit that when Congress has not created any new property rights, but 'merely attaches consequences, federally defined, to rights created under state law,' we must look to state law to define the 'rights the [judgment debtor] has in the property the [creditor] seeks to reach.'" *Calderon-Cardona*, 770 F.3d at 1001 (quoting *Export-Import Bank v. Asia Pulp & Paper Co.*, 609 F.3d 111, 117 (2d Cir. 2010) (brackets in original)). The relevant state law governing EFTs blocked by New York banks is Article 4 of the New York Uniform Commercial Code ("N.Y. UCC"). *See* N.Y. UCC § 4-A; *Asia Pulp*, 609 F.3d at 118 (Article 4-A was "enacted to provide a comprehensive body of law that defines the rights and obligations that arise from wire transfers." (internal quotation marks omitted)).

The application of N.Y. UCC Article 4 to EFTs has received extensive consideration in this Circuit. In *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009), we determined that under New York law "EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank." *Id.* at 71. Subsequently, both *Calderon-Cardona* and *Hausler* addressed this issue with particular clarity. In *Calderon-Cardona*, we observed that "under the N.Y. UCC's statutory scheme, the only entity with a property interest in an EFT while it is midstream is the entity immediately preceding the bank 'holding' the EFT in the transaction chain." Therefore, *Calderon-Cardona* held:

> "[A]n EFT blocked midstream is 'property of a foreign state' or 'the property of an agency or instrumentality of such a state,' subject to attachment under 28 U.S.C. § 1610(g), *only* where either the state itself or an agency or instrumentality

6

thereof (such as a state-owned financial institution) transmitted the EFT *directly*
to the bank where the EFT is held pursuant to the block."

*Calderon-Cardona*, 770 F.3d at 1002 (emphasis added). *Hausler* then further extended

*Calderon-Cardona*'s holding to the TRIA context. In *Hausler*, we held that "in order for an

EFT to be a 'blocked asset of' Cuba under TRIA § 201(a), either Cuba 'itself or an agency or

instrumentality thereof (such as a state-owned financial institution) [must have] transmitted the

EFT *directly* to the bank where the EFT is held pursuant to the block." *Hausler*, 770 F.3d at

212 (quoting *Calderon-Cardona*, 770 F.3d at 1002) (emphasis added) (brackets in original)).

The Saderat Account falls squarely within the holding of these cases. Here, as in

*Hausler*, "it is undisputed that no [terrorist entity] transmitted any of the blocked EFTs in this

case directly to a blocking bank." *Id.* Instead, the Saderat Account funds were transmitted

directly to JPMCB by Lloyds Bank. The Levins nowhere assert that Lloyds constitutes an

"agency or instrumentality" of Iran. Because the EFT was not transferred directly to JPMCB

by a foreign state or an agency or instrumentality of a foreign state, it was not "property of" a

foreign state or an agency or instrumentality of such a state, and thus not attachable under FSIA

or TRIA.

On appeal, the Levins principally contend that ownership of the Saderat Account at the

time of blocking is a disputed question of fact and that the district court should have allowed

supplementation of their complaint in order to proceed to discovery on that question. We

disagree. New York's law of property—as applied to the context of EFTs blocked pursuant to

OFAC sanctions—has been established by *Calderon-Cardona* and *Hausler*. Under those cases,

ownership of an EFT blocked by a New York bank depends entirely on the identity of the

immediate transferor to that bank. *See Calderon-Cardona*, 770 F.3d at 1002 (permitting

7

attachment "*only* where either the state itself or an agency or instrumentality thereof . . . transmitted the EFT *directly* to the bank where the EFT is held pursuant to the block") (emphasis added); *Hausler*, 770 F.3d at 212 (same). In this case, the identity of the immediate transferor—Lloyds Bank—is undisputed. Since neither party contends that Lloyds Bank is an agency or instrumentality of Iran itself, the EFT is not attachable.

Nor can we diverge from that result based on the Levins' purported distinction between the "intermediary bank" at issue in *Calderon-Cardona* and *Hausler* and the "correspondent bank" relationship at issue here. To begin with, many authorities apparently consider these categories indistinct. *See, e.g.*, *Sec. & Exch. Comm'n v. Homa*, 514 F.3d 661, 668 n.15 (7th Cir. 2008) ("A correspondent bank is an intermediary bank that a primary bank uses to facilitate currency transactions in the country in which the intermediary bank is located."). More importantly, however, our precedents interpreting N.Y. UCC Article 4 render the asserted distinction irrelevant. As the district court properly held, the purported distinction between correspondent and intermediary banks "is a distinction without a difference, at least as it relates to the Second Circuit's rule in *Hausler*." *Levin*, 2017 WL 4863094, at *4. Regardless of the particular relationship between the immediate transferor of the funds and the entity that held title to those funds at the beginning of the transaction, the ownership of blocked EFT funds is clearly assigned by *Calderon-Cardona* and *Hausler*. "[E]ven where an EFT is transferred to a blocking bank by a 'correspondent bank,' the transferred asset is considered the 'sole property' of the correspondent bank, rather than the 'principal' bank (i.e., Bank Saderat)." *Id.* (citing *Doe v. Ejercito De Liberacion Nacional*, No. 15 Civ. 8652-LTS, 2017 WL 591193, at *1-3 (S.D.N.Y. Feb. 14, 2017), *aff'd*, 899 F.3d 152 (2d Cir. 2018)).

Finally, we note that our circuit's recent opinion in *Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152 (2d Cir. 2018), further bolsters our conclusion that the funds blocked by JPMCB are not attachable. In *Doe*, a terrorist entity, Tajco Ltd. ("Tajco"), originated an EFT that flowed to an intermediary bank, AHLI United Bank UK PLC ("AHLI"), which then transmitted the funds to JPMCB, which then blocked the funds. *Id.* at 155. That sequence of events is highly analogous to the one at issue here, with Tajco taking the place of Iran, AHLI taking the place of Lloyds, and JPMCB playing the same role. *Doe* applied *Calderon-Cardona* and *Hausler* in upholding the district court's ruling that the funds were not attachable. *See id.* at 157 ("[O]ur decisions in *Calderon-Cardona* and *Hausler* compel the conclusion that neither Grand Stores nor Tajco has any attachable property interest in the blocked funds at JPMorgan since they were not the entities that directly passed the EFTs to JPMorgan."). We do the same.

\*　　\*　　\*

We have considered the Levins' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9